UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| CAPITAL PLUS CONSTRUCTION SERVICES, LLC,<br><br>    Plaintiff/Counter-Defendant,<br><br>vs.<br><br>BLUCOR CONTRACTING, INC.,<br><br>    Defendant/Counter-Plaintiff/<br>    Third-Party Plaintiff,<br>vs.<br><br>STODGHILL & SONS MINING, LLC,<br><br>    Third-Party Defendant. | 3:19-cv-00471-DCLC-HBG |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Third-Party Defendant Stodghill & Sons Mining, LLC's ("Stodghill") Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 25]. Third-Party Plaintiff Blucor Contracting, Inc. ("Blucor") responded in opposition [Doc. 34] and Stodghill replied [Doc. 36]. This matter is now ripe for resolution. For the following reasons, Stodghill's Motion to Dismiss [Doc. 25] is **DENIED**.

**I. BACKGROUND**

In 2017, the Flood Control District of Maricopa County, Arizona hired Blucor as the general contractor for a project in Phoenix, Arizona ("the project") [Doc. 13, p. 2]. On January 1, 2019, Blucor accepted a bid proposal from Stodghill for the purpose of manufacturing and delivering various rock products to the project [*Id.*]. Blucor and Stodghill entered into a Subcontractor Agreement on January 30, 2019, in which Stodghill agreed to "supply and deliver

1

specified quantities and quality of rip-rap and gravel" to the project [*Id*.]. The Subcontractor Agreement provides that Blucor would only be responsible for payment of rock meeting the contract specifications, delivered by Stodghill, and incorporated into the project by Blucor [*Id*. at p. 3]. Additionally, Stodghill agreed to indemnify Blucor from any and all liability, claims, suits, damages, loss, judgment, or expense which may be incurred by Blucor for any reason of Stodghill's failure to timely and adequately perform under the Subcontractor Agreement [Doc. 14, p. 10].

In March and April of 2019, Blucor asserts that Stodghill failed to deliver the rock in compliance with the Subcontractor Agreement [Doc. 13, p. 3]. For example, Stodghill only delivered 1,442 tons of rock rather than the 5,000 tons needed to meet Blucor's construction schedule in March 2019, and 495 tons rather than the 10,000 tons needed to meet Blucor's construction schedule in April 2019 [*Id*. at p. 4]. Blucor was also required to transfer 1,367 tons of rock due to Stodghill's inability to deliver the rock on its own [*Id*.]. In an attempt to increase the speed and rate of delivery, Stodghill sought lending from an "underwriter," later determined to be CapitalPlus Construction Services, LLC ("CapitalPlus"), to obtain funds needed to repair and/or supplement its hauling fleet [Doc. 34-1, p. 3]. On April 25, CapitalPlus notified Stodghill that the addendum to the Subcontractor Agreement would need to be revised to "call out the scope of [Stodghill's] services and requirements by Blucor for payment of the two scopes which include: 1) generation and storage of the material on [Stodghill's] site; and 2) delivery of the material to the Blucor site." [*Id*. at p. 28]. Stodghill subsequently informed Blucor of the required revisions and the parties executed a Revised Addendum on May 1, 2019 [*Id*. at p. 36-38].

On May 6, 2019, Stodghill and CapitalPlus entered into a Master Accounts Receivable Purchase and Security Agreement ("the Master Agreement") pursuant to which CapitalPlus

2

purchased invoices from Stodghill, Stodghill assigned the invoices to CapitalPlus, and payment of such invoices were directed to be remitted to CapitalPlus [Doc. 5, p. 1]. On May 8, 2019, Stodghill sent Blucor documents titled "General Assignment" and "Invoice Verification" which both contained the CapitalPlus letterhead [Doc. 14-4]. The Invoice Verification instructed Blucor to verify that Invoice # 4646 for the amount of $529,220.62 would be paid by Blucor to Stodghill and mailed to the Knoxville, Tennessee address of CapitalPlus [*Id.* at p. 2]. The General Assignment, which Blucor Refers to as the "Joint Check Agreement," provides, in relevant part:

> Stodghill & Sons Mining, LLC has contracted with CapitalPlus Construction Services, LLC ("CapitalPlus") to provide a variety of services including but not limited to: funds control and payment processing; lien rights compliance and managing lien releases; risk management services; and providing working capital. This partnership and availability of these services will enable Stodghill & Sons Mining LLC to serve your organization in a more efficient and effective manner.
>
> Therefore, payments for all invoices should be made payable to Stodghill & Sons Mining LLC and mailed to Stodghill & Sons Mining LLC C/O CapitalPlus Construction Services, LLC Dept #888083 Knoxville, TN 37995-0001.
>
> Furthermore, for the aforementioned services, please allow this letter to serve as written Notice of Assignment that CapitalPlus has been granted an assignment of all accounts receivable of Stodghill & Sons Mining LLC. This assignment has been duly recorded under the Uniform Commercial Code. Please make proper notations on your Ledger. Please note that Blucor Contracting Inc. is not waiving any claims that it may have against Stodghill & Sons Mining LLC, but is merely agreeing not to assert those claims against CapitalPlus. Additionally, there will be no claims, setoffs, or defenses of any nature against funds paid to CapitalPlus. This notice shall not be modified and remain in full force and effect until you are notified by CapitalPlus to the contrary. Tennessee Law, jurisdiction and venue shall apply hereto. . .

[*Id.*]. On May 8, 2019, Blucor signed the General Assignment and Invoice Verification and returned both documents to Stodghill [Doc. 34-1, p. 40].

Despite the funding provided by CapitalPlus, Blucor asserts that Stodghill continued to fail to timely deliver the quantities or quality of specified rock throughout the summer of 2019 [Doc. 13, p. 7]. Blucor contends that it continued to make timely payments to Stodghill and CapitalPlus

3

for rock received or delivered for use on the project [*Id.*]. On August 5, 2019, CapitalPlus sent Blucor a letter reiterating that Stodghill assigned and sold the invoice for Blucor's project to CapitalPlus and demanding payment of the invoice in the amount of $529,220.62 [*Id.*]. CapitalPlus directed Stodghill not to transfer any rock to the Blucor project without prior written consent, subsequently gave written permission for Blucor to remove the rock that was ordered, and then revoked such permission a week later [Doc. 34-1, p. 49-52]. The parties then negotiated a "recovery plan" [Doc. 14, p. 8-9]. However, Blucor contends that, due to interference by CapitalPlus, Stodghill continued to fail to produce, process, and make available the quality and quantity of rock required for the project [*Id*. at p. 9]. Blucor asserts that the total value of rock actually delivered for the project is $358,428.78 and that it has paid Stodghill and CapitalPlus a total of $358,428.78 [*Id.*]. CapitalPlus asserts that, based on the assignment by Stodghill and Blucor's representation that the invoice amount was due and owing, it is entitled payment of the balance of the $529,220.62 invoice.

Based on these facts, CapitalPlus initiated this action against Blucor in the Chancery Court for Knox County, Tennessee on October 22, 2019 [Doc. 5] asserting claims for breach of contract, promissory estoppel, and unjust enrichment/quantum meruit [*Id*. at p. 3-4]. Blucor removed the action to this Court on November 19, 2019, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 [Doc. 1]. Following removal, Blucor filed counterclaims against CapitalPlus for intentional interference with a business relationship, statutory and common law inducement and procurement of breach of contract, and civil conspiracy [Doc. 13, p. 10-12] and a Third-Party Complaint against Stodghill asserting claims for breach of contract, fraudulent inducement, negligent misrepresentation, and civil conspiracy [Doc. 14, p. 11-14]. Stodghill filed the Motion to Dismiss

4

[Doc. 25] that is currently before the Court on February 7, 2020, asserting that this Court lacks personal jurisdiction over it pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

The plaintiff bears the burden of establishing personal jurisdiction. *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974). A district court may decide whether to rule on a 12(b)(2) motion upon a full trial record, after an evidentiary hearing, or merely on the basis of a written record. *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980). The Court finds that the issue of personal jurisdiction in this matter can be properly decided on the basis of the written record; thus, the plaintiff must make a "prima facie showing that personal jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff can satisfy this burden by "'establishing with reasonable particularly sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Additionally, the Court "'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Welsh*, 631 F.2d at 439 (quoting *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 571 (S.D. Fla. 1978)).

A federal court sitting in diversity must apply the law of the state in which it sits to determine the existence of personal jurisdiction. *Id.* Tennessee's long-arm statute[1] is "coterminous with the limits on personal jurisdiction imposed by the due process clause." *Payne v. Motorists' Mut. Ins. Companies*, 4 F.3d 452, 455 (6th Cir. 1993) (citing *Masada Investment Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985)). Thus, the Court need only determine whether the exercise of

---

[1] Under Tennessee's long-arm statute, jurisdiction may be asserted on "any basis not inconsistent with the constitution of [Tennessee] or of the United States." Tenn. Code Ann. § 20-2-214(a)(6).

5

personal jurisdiction over Defendant would violate constitutional due process. *Id*. Personal jurisdiction comes into two forms—general jurisdiction and specific jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 712-13 (6th Cir. 2012).

General jurisdiction allows a court to hear any claims against such defendant when its connections with the forum state are so "continuous and systematic" as to render it "at home" in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945). A corporation is "at home" in the state where its principal place of business is located or in which it is incorporated. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). This Court has extended this rule to limited liability companies. *Convenience Network, Inc. v. AATAC, LLC*, No. 3:18-CV-21, 2018 WL 10195667, at *2 (E.D. Tenn. Sept. 27, 2018) (holding that "in the context of a limited liability company…general jurisdiction has typically been limited to the states where the LLC is organized and/or keeps its principal office.").

Specific jurisdiction focuses "on the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). A court may exercise specific jurisdiction if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Sixth Circuit applies a three-part test to determine whether the exercise of specific jurisdiction is valid:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

## III. ANALYSIS

CapitalPlus is a Delaware limited liability company with its principal place of business in Knoxville, Tennessee [Doc. 5, p. 1]. Blucor is incorporated in Arizona [*Id.*] and Stodghill is an Arizona limited liability company with its principal place of business in Arizona [Doc. 14, p. 1-2]. Stodghill contends that this Court lacks general jurisdiction over it because "there are no connections that are 'continuous and systematic' enough to render it "at home" in Tennessee [Doc. 26, p. 8]. Blucor does not argue in its response that this Court has general jurisdiction over Stodghill [Doc. 34]. Therefore, the Court will focus its personal jurisdiction analysis on the existence of specific jurisdiction and the requirements of (1) purposeful availment; (2) the cause of action arises from the defendant's activities in the forum state; and (3) reasonableness of the exercise of personal jurisdiction.

### A. Purposeful Availment

Stodghill asserts that its dealings with CapitalPlus are "not broad enough to open the door for personal jurisdiction against Stodghill in Tennessee." [Doc. 26, p. 9]. Specifically, Stodghill contends that "seeking funding from a Tennessee lender through a separate contract and assigning payments under the subcontract to that lender in Tennessee is not purposeful availment of doing business in Tennessee" [*Id.* at p. 10]. The majority of Blucor's argument in response relies on the assertion that Stodghill and CapitalPlus are "in a partnership and agency relationship." [Doc. 34, p. 17]. Although the Court must consider the pleadings and affidavits in the light most favorable to Blucor, the Court "need not accept legal conclusions" as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Without regard to any legal assertions concerning a partnership and agency relationship, Blucor argues that Stodghill purposefully availed itself of the privilege of acting in Tennessee

7

because Stodghill (1) "orchestrated and accomplished" amendments to the Subcontractor Agreement at the direction of CapitalPlus; (2) executed the Master Agreement with CapitalPlus in Tennessee; (3) appointed CapitalPlus as its "attorney-in-fact…to do and perform all acts, matters, and things…as [Stodghill] could personally do"; (4) directed all payments by Blucor to be sent to Stodghill "care of CapitalPlus at an address located in Knoxville, Tennessee"; and (5) agreed that "Tennessee law, jurisdiction and venue" applied to the General Assignment. [Doc. 34, p. 16-19].

The requirement of "purposeful availment" protects out-of-state defendants from being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). Thus, to establish purposeful availment, the defendant's contacts with the forum state must "proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id*. (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Although the Supreme Court has recognized that a "contract with an out-of-state party *alone*" is not enough to establish purposeful availment in the out-of-state party's home forum, it has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).

Here, Stodghill has not been "haled into" court in Tennessee as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or third person." *Id.* at 475. Rather, Stodghill's contacts with Tennessee are a direct result of its own actions. First, Stodghill solicited lending from CapitalPlus, a Tennessee LLC, for the sole purpose of "assist[ing] Blucor and Stodghill in their relationship." [Doc. 5, p. 3]. Stodghill and CapitalPlus

8

executed such lending arrangement, the Master Agreement, in Tennessee. Although this fact, alone, cannot establish purposeful availment, Stodghill's activities involving CapitalPlus and Tennessee went far beyond the Master Agreement. Stodghill sent the General Assignment and Invoice Verification documents from CapitalPlus, in Tennessee, to Blucor, in Arizona. Furthermore, Stodghill signed the General Assignment, which specified that "Tennessee law, jurisdiction and venue" applied thereto. [Doc. 14-4, p. 1]. The General Assignment also directed Blucor to send all payments to Stodghill at CapitalPlus's address in Knoxville, Tennessee. This General Assignment further confirms that the purpose of the agreement between Stodghill and CapitalPlus was to "enable [Stodghill] to serve [Blucor] in a more efficient and effective manner." [*Id.*].

Moreover, Stodghill, from the beginning of its relationship with CapitalPlus, allowed CapitalPlus to significantly control its operations and dealings with Blucor. This is evidenced by the ability of CapitalPlus to demand revision of the addendum to the Subcontractor Agreement and essentially halt all removal or transfer of rock at Stodghill's site. Stodghill reached out beyond the state of Arizona and created continuing relationships and obligations with CapitalPlus in Tennessee. Likewise, Stodghill also created continuing obligations for Blucor in Tennessee by virtue of its agreement with CapitalPlus. Thus, Stodghill purposefully availed itself of the privileges of the state of Tennessee and, as a result, is "subject to regulation and sanctions in [Tennessee] for the consequences of [its] activities." *Burger King Corp.*, 471 U.S. at 473.

### B. Cause of Action arises from Defendant's Activities in the Forum State

As for the second element required for specific jurisdiction, Stodghill asserts that the causes of action asserted in the Third-Party Complaint do not arise from the its activities in Tennessee [Doc. 26, p. 10]. Stodghill argues that its only activities in Tennessee were its lending agreement

with CapitalPlus and assignment of payments by Blucor to CapitalPlus, and that Blucor's claims "arise solely from Stodghill's contacts with Arizona" [*Id*. at p. 10-11]. In response, Blucor argues that the claims in the Third-Party Complaint "all relate to or arise out of consequences and fallout from [the] transaction of business" in Tennessee [Doc. 34, p. 20].

A cause of action arises from the defendant's activities in the forum state if the "defendant's contacts with the forum state are related to the operative facts of the controversy." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). This "arising from" requirement involves a "lenient standard." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). The cause of action does not have to "formally 'arise from' defendant's contacts with the forum." *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989). The cause of action must only "'have a substantial connection with the defendant's in-state activities'" *Id*. (quoting *S. Mach. Co.*, 401 F.2d at 384 n.27).

Stodghill's contacts with the state of Tennessee—soliciting funding from CapitalPlus solely to assist the relationship with Blucor, executing the Master Agreement in Tennessee, directing payments from Blucor to Tennessee, and allowing CapitalPlus to extensively control its operations with Blucor—are significantly related to the operative facts of the current controversy. The Court, considering the facts in a light most favorable to Blucor, is not persuaded by Stodghill's argument that Blucor's claims arise solely from Stodghill's contacts with Arizona. The contracts in this matter—the Revised Addendum to the Subcontractor Agreement, the Master Agreement, and the General Assignment—are undeniably intertwined. CapitalPlus's claims against Blucor and Blucor's claims against Stodghill are direct consequences of Stodghill's solicitation of funding from CapitalPlus and assignment of the Blucor invoice to CapitalPlus. In fact, Blucor asserts, with respect to each of its third-party claims, that Stodghill is liable to Blucor for all or part of any

damages that Blucor incurs to CapitalPlus as a result of the original complaint against Blucor [Doc. 14, p. 11-14].

    **C.**     **Exercise of Personal Jurisdiction is Reasonable**

Finally, the third requirement of reasonableness is generally inferred to be met "[w]hen the first two elements are met." *First Nat. Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). Although Stodghill asserts that its connections to Tennessee are not substantial enough to make this Court's exercise of personal jurisdiction over it reasonable, the Court has found that Stodghill purposefully availed itself of the privileges of Tennessee and that this cause of action arises from Stodghill's contacts with Tennessee. Tennessee has an interest in resolving this dispute because CapitalPlus, a Tennessee LLC, asserts that it is owed damages from Blucor, and Blucor asserts that Stodghill, rather than Blucor, is liable for all or part of those damages.

Considering the three-part test for specific jurisdiction is satisfied, the Court finds that Stodghill is subject to personal jurisdiction in Tennessee for this cause of action. Additionally, because the Court finds that Stodghill's contacts with Tennessee are sufficient to exercise specific personal jurisdiction over it with respect to this matter, the Court need not address Blucor's alternative arguments concerning conspiracy jurisdiction, content-based jurisdiction, estoppel, and pendent jurisdiction. [Doc. 34]

**IV.**     **CONCLUSION**

Accordingly, for the reasons stated herein, Third-Party Defendant Stodghill's Motion to Dismiss [Doc. 25] is **DENIED**.

SO ORDERED:

                                      s/ Clifton L. Corker
                                      United States District Judge